# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-23V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*
                                   \*

| | |
|---|---|
| NATHANIA STEPHENS, | **UNPUBLISHED** |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: September 30, 2022 |
| | Interim Attorneys' Fees and Costs. |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

*Randall G. Knutson*, Knutson & Casey Law Firm, Mankato, MN, for Petitioner
*Tyler King*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 4, 2018, Nathania Stephens ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that she developed Guillain-Barré syndrome ("GBS") as a result of the Tdap vaccine she received on February 29, 2016. Pet. at 1.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on April 8, 2022, requesting a total of $69,625.21. ECF No. 63 at 1 (hereinafter "Fees App."). Respondent filed a response

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

(hereinafter "Fees Response" or "Fees Resp.") on April 22, 2022, stating that Respondent defers to me as to whether Petitioner has met "the legal standard for an interim fees and costs award, as set forth in *Avera v. HHS*…[and] regarding whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Fees Resp. at 2, ECF No. 63. Petitioner did not file a reply.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$65,888.21** in interim attorneys' fees and costs.

## I.   Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw*, the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

2

**B. Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

**C. Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

3

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.    Discussion

### A.  Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). First, Petitioner's counsel has been working on this case since 2016, and "Petitioner did not pay for or bear any costs or attorney fees, and there were no retainer fees." Fees App., Ex. 1 at 1. Second, Petitioner has retained an expert at substantial cost. Fees App., Ex. 2 at 41-43 (showing that Petitioner's expert, Vera Byers, MD, PhD, has billed $11,800.00 in this case so far). Third, the entitlement hearing in this matter is scheduled for August 2023, meaning that any award of final attorneys' fees that Petitioner might receive would still be more than a year away. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health*

*& Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

**B.  Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See generally* Fees Resp. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted two expert reports from Vera Byers, MD, PhD, who is board certified in internal medicine. Ex. 16 (hereinafter "Byers CV") at 4. Dr. Byers opined that, on the basis of the temporal proximity between vaccination and symptom onset (roughly 14 days), the known relationship between vaccines and GBS, and the absence of another cause in Petitioner's medical record, the Tdap vaccine was likely "a cause or contributing factor to [Petitioner's] disease." Ex. 19 at 4. Dr. Byers rejected the opinion of Respondent's expert that campylobacter jejuni infection caused Petitioner's GBS because "[t]here is no indication that Campylobacter infection was present when [Petitioner] was hospitalized… [and] [t]here is no mention of diarrheal illness suffered shortly before the onset of the GBS." *Id.* at 3.

This constitutes sufficient evidence to establish a reasonable basis for Petitioner's claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

**C.  Attorneys' Fees**

Petitioner requests a total of $57,200.00 in attorneys' fees.  *See* Fees App. at 1.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for

5

subsequent years.[3]

Petitioner's counsel, Mr. Randall Knutson, requests a rate of $295.00 per hour for work performed in 2016 and a rate of $365.00 per hour for work performed from 2017 through 2022. Fees App. at 1. Mr. Knutson also requests a rate of $130.00 per hour for paralegal work performed from 2016 through 2019, and a rate of $140.00 per hour for paralegal work performed from 2020 through 2022. Fees App. at 1.

This request is consistent with what I and other special masters have previously awarded Mr. Knutson and the Knutson & Casey Law Firm. *See, e.g., Brooks v. Sec'y of Health & Hum. Servs.,* No. 18-1195V, 2020 WL 6144797, at *2 (Fed. Cl. Spec. Mstr. Sept. 24, 2020); *Hodgdon v. Sec'y of Health & Hum. Servs.,* No. 18-533V, 2020 WL 5407923, at *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2020); *Golding v. Sec'y of Health & Hum. Servs.,* No. 16-1132V, 2019 WL 3753273, at *2 (Fed. Cl. Spec. Mstr. July 18, 2019). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed.

---

[3] The 2016 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

A number of line items in the billing records are for tasks that are clerical or administrative. Examples include (but are not limited to):

- September 2, 2016 (0.4 hours): "Open file, print labels, create contact sheet"
- January 4, 2018 (0.2 hours): "Rev[iew] filing confirmations from court"
- June 3, 2020 (0.2 hours): "Download & Save Resp. Exhibits 35-35.17 & 36-36.1"
- August 3, 2021 (0.1 hours): "Review Notice of Appearance, Update Contact Sheet"

These tasks, performed by both Mr. Knutson and a paralegal, total approximately nine hours, resulting in $1,377.00 in charges. My colleagues and I have previously advised Petitioner's counsel that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and we have reduced their requested attorneys' fees accordingly. *See, e.g., Johnson v. Sec'y of Health & Hum. Servs.*, No. 18-410V, 2020 WL 4558797, at *4 (Fed. Cl. Spec. Mstr. June 30, 2020) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks); *Golding v. Sec'y of Health & Hum. Servs.,* No. 16-1132V, 2018 WL 1163996, at *4 (Fed. Cl. Spec. Mstr. Feb. 5, 2018) (reducing the requested attorneys' fees by $1,892.00 for administrative and clerical tasks).

Accordingly, I find that a reduction in requested attorneys' fees of $1,377.00 is warranted here.

Total attorneys' fees to be awarded: **$55,823.00**

### D. Reasonable Costs

Petitioner requests a total of $12,425.21 in costs. Specifically, Petitioner requests $206.98 for medical records requests; $400.00 for the Court's filing fee; $11,800.00 for Dr. Byers's expert reports; and $18.23 for a shipment via FedEx. Fees App., Ex. 2 at 33-34.

I find that Petitioner's costs for obtaining medical records are reasonable and supported with documentation. Accordingly, they will be paid in full.

#### 1. Petitioner's Expert Costs for Vera Byers, MD, PhD

Petitioner requests an hourly rate of $400.00 for 29.5 hours of work performed by Dr. Byers, for a total of $11,800.00. Dr. Byers received her medical degree from the University of California, San Francisco, and her PhD in Basic Immunology from the University of California, Los Angeles. Byers CV at 3. She presently works for a consulting company called Immunology, Inc., and has spent much of her career researching vaccines and autoimmune diseases. *Id.* at 1-2. Dr. Byers is board certified in internal medicine. *Id.* at 1.

Dr. Byers has provided an accounting of the hours she expended preparing and writing two expert reports. Fees App., Ex. 2 at 41-43. It is well established that costs associated with retaining medical experts are compensable within the Program, provided that the hourly rate and the number of hours billed are reasonable. *Simon v. Sec'y of Health & Hum. Servs.*, No. 05-941V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

Dr. Byers's hourly rate is consistent with what I and other special masters have previously awarded her. *See, e.g., Riley v. Sec'y of Health & Hum. Servs.*, 2019 WL 7560248, at *4 (Fed. Cl. Spec. Mstr. Dec. 5, 2019); *Dineen v. Sec'y of Health & Hum. Servs.,* No. 15-700V, 2019 WL 6139492, at *4 (Fed. Cl. Spec. Mstr. Oct. 29, 2019); *cf. Jaafar on behalf of A.M. v. Sec'y of Health & Hum. Servs.*, No. 15-267V, 2019 WL 2265329, at *5 (Fed. Cl. Spec. Mstr. Apr. 26, 2019) (reducing Dr. Byers's hourly rate from $400.00 to $200.00 to account for deficiencies in her performance as an expert); *A.W. by and Through Wood v. Sec'y of Health & Hum. Servs.*, No. 15-1568V, 2019 WL 518521, at *7-8 (Fed. Cl. Spec. Mstr. Jan. 11, 2019) (declining to award any expert costs due to serious deficiencies in Dr. Byers's performance).

Upon review of the invoices Dr. Byers supplied, I find that the number of hours billed is excessive given Dr. Byers's output in this case thus far. Dr. Byers logged 29.5 hours of work but produced only two expert reports totaling about seven pages in length. The page count shrinks to four when the list of cited sources and summary of Dr. Byers's own background and qualifications are removed. *See* Exs. 19, 31. Reduction of medical expert costs is appropriate where "excessive hours are unsubstantiated in the evidentiary record." *Kuperus v. Sec'y of Health & Hum. Servs.*, No. 01-0060V, 2006 WL 3499516, at *4-5 (Fed. Cl. Spec. Mstr. Nov. 17, 2006) (finding that 31 hours was excessive where the expert produced a seven-page responsive report); *Gruber ex. rel. Gruber v. Sec'y of Health & Hum. Servs.*, 91 Fed. Cl. 773, 796 (2010) (affirming special master's reduction of expert hours from 18 to 12 where the expert produced an eight-and-a-half-page report).

In addition to excessive billing, two of the line items on Dr. Byers's invoice constitute impermissible block-billing:

- January 7, 2019 (6.0 hours): "Complete Althan [sic] prongs; search literature to be sure antigenic mimicry has not been claimed for DTAP, search literature for other GBS/DtaP cases, discussion with Kinsbourne; discussion with Knutson."
- November 10, 2019 (3.0 hours): "Reading Dr. Kendl's report, re-reading medical records of Stephens, formulating a response, complete first draft of the response."

I additionally note that several of Dr. Byers' entries are vague such that it is impossible to determine their reasonableness. For example, she documented two and a half hours of work that she described as "begin review." Fees App., Ex. 2 at 41-43. The next entry lists "begin review of medical records" for four hours. *Id.* It is unclear what the distinction between "begin review" and "begin review of medical records" is.

The Guidelines for Practice Under the National Vaccine Injury Compensation Program require experts and attorneys to be specific in the description of time billed and to separate discrete tasks into different line items. *Guidelines* at § X.3.B. Combining multiple tasks into one large time block makes it impossible for the Court to assess the reasonableness of the time spent on each task. *Id.*; *Loving v. Sec'y of Health & Hum. Servs.*, No. 02–469V, 2015 WL 10579257, at *11 (Fed. Cl. Spec. Mstr. Dec. 15, 2015). Dr. Byers is advised to refrain from vague and block billing in the future to avoid additional deductions to Petitioner's requested costs.

Based on the above, I find that a reduction to the requested expert costs by 20% is appropriate. Accordingly, I will reduce the amount of expert costs awarded to Petitioner by $2,360.00.

2. <u>Other Expenses</u>

Petitioner's counsel did not supply documentation of having paid the filing fee, but the docket shows that it was paid at the time that the petition was filed. ECF No. 1. Counsel had been assigned to the case for approximately 18 months at the time of filing, and Mr. Knutson's affidavit states that all fees and costs have been borne by counsel. Fees App., Ex. 1 at 1. I find this acceptable, and the filing fee will be paid in full.

Petitioner's counsel also did not provide documentation of the FedEx charge in the amount of $18.23. Because the invoices reflect that this shipment was used to send documents to the Court for filing and because the amount is reasonable, it will also be paid in full. However, I caution Petitioner's counsel to provide such documentation in the future.

Total costs to be awarded: **$10,065.21**

### III.     Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$65,888.21**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Mr. Randall G. Knutson.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[4]

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.